# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| STEVEN J. MCNAMARA, | : | Bankruptcy No. 06-16108DWS |
| Debtor. | : | |

| | | |
|---|---|---|
| JOHN J. DEL CASALE, | : | Adversary No. 07-0140 |
| Plaintiff, | : | |
| v. | : | |
| STEPHEN J. MCNAMARA, | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Plaintiff has filed this adversary proceeding to obtain a determination that his claim against the Debtor be excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code. Plaintiff contends that the Debtor made fraudulent misrepresentations to induce Plaintiff to contract with him for the installation of a driveway. After trial on this matter, and for the reasons stated below, I will enter judgment in favor of the Debtor and against the Plaintiff.

**FINDINGS OF FACT**

Debtor is thirty-six years old and operates a sole proprietorship under the name Custom Patios, which performs landscaping and hardscaping with both interior and exterior applications. Transcript of Trial ("Tr.") at 59. Debtor has been performing landscaping and hardscaping since the age of sixteen. Id. When he met Plaintiff in approximately April of 2004, the main portion of his business was landscaping and the installation of patios and walkways. Tr. at 8, 59.

Plaintiff wanted to replace his existing blacktop driveway with a paver driveway, i.e. one composed of interlocking stone blocks. Not only was the blacktop material in need of replacement, Plaintiff had been having drainage problems with his driveway since 1997 resulting in water collecting under the driveway material, due in part to clay in the soil. Tr. at 10.

Plaintiff approached a longtime acquaintance that was also a contractor, Frank Orman ("Orman"). Plaintiff asked Orman if he could perform the work, and if not, if Orman knew someone who could. Tr. at 8-9. Orman in turn approached another contractor who referred Debtor for the job. Tr. at 62. Debtor had never worked with Orman before. Tr. at 63.

Debtor initially met with Orman, not Plaintiff, to bid the job. However, Orman was not sure of the extent of the job, i.e. whether it would entail all or only part of the driveway. Debtor therefore gave him an estimate of $100,000 for the entire driveway (approximately 5000 square feet). When Orman balked at the price, Debtor explained that the proposal included excavating the base and underlying soil to prepare a new base for the driveway.

2

Orman asked for an estimate without the excavation. Debtor replied that he could provide a lower number that would reflect a lesser preparation of the existing base, but that he could not warranty such a job. Tr. at 63-65. Plaintiff was not present at this meeting, nor was any evidence presented to establish whether Orman conveyed Debtor's restriction to Plaintiff.

Debtor subsequently met with Plaintiff. While the parties agree that Debtor presented some examples of his prior work, the form of the presentation is disputed. Plaintiff expressly recalls that Debtor showed him a large three-ring binder of photos, which he leafed through:

> Mr. McNamara was very confident in his skills. He had brought with him a large three-ringed binder which he allowed me to look at. The three-ringed binder contained a number of jobs which Mr. McNamara represented that he had performed. I commented to him that while I was impressed with what was contained in the three-ringed binder, that there didn't appear to be any driveways. He had said that he had done driveways and that they just had not gotten into his three-ringed binder. And when someone shows me a three-ringed binder that thick, I figured he knew what he was doing . . .

Tr. at 11-12. See also Tr. at 52 ("he had a three-ringed binder that I remember looking at . . . I remember flipping through. . . ). In sharp contrast, Defendant denies ever owning a binder of exemplar photos. Rather he specifically recalls having to go into Plaintiff's garage to access an electrical outlet for his computer in order to show Plaintiff digital images of his work. Tr. at 65. Regardless of their dispute as to the presentation, the testimony of both parties is that Plaintiff saw numerous examples of Debtor's work and was impressed.

While Plaintiff was impressed with Debtor's portfolio, it was Orman's recommendation of Debtor that motivated Plaintiff to hire Debtor: "My contact with Mr. Orman was can you do the job. Mr. Orman referred me to Mr. McNamara." Tr. at 15.

3

Though Debtor offered a list of references, Tr. at 67, the only person Plaintiff spoke to regarding Debtor's qualifications was Orman:

> Q. . . Have you ever spoken to anyone else about Mr. McNamara's work on other jobs?
>
> A. Yes.
>
> Q. Mr. [Orman] made that representation.
>
> Q. And I think Mr. [Orman] – I presume Mr. [Orman] gave you positive reports or you wouldn't have agreed to enter into the contract?
>
> A. Mr. [Orman] – the sequence is Frank, do you want the job? No, Steve knows how to do it. I'll send you Steve McNamara.

Tr. at 51-52.[1]

Debtor testified that he never portrayed himself to Plaintiff as having extensive experience with paver driveways as opposed to other paver stone applications. Debtor's experience has primarily been with patios, walkways and landscaping. This is consistent with the content of the portfolio he showed Plaintiff and Plaintiff's observation that there were no driveway photos therein. Tr. at 61. Debtor testified that he had installed one paver driveway prior to installing Plaintiff's and believes, but was not certain, that he showed a photo of that to Plaintiff. Tr. at 60, 67.

---

[1] This Memorandum Opinion shall use the spelling of Mr. Orman's name found in the April 27 proposal, Exhibit D-4, rather than the phonetic spelling used by the transcriber.

Debtor followed-up his visit with Plaintiff by submitting a proposal dated April 13, 2004. Exhibit M-1. For reasons that were not stated on the record, this engagement was for only a portion of the driveway. Tr. at 68-69. The proposal identified Plaintiff as the client and specified items that Debtor would perform: (1) the macadam would be dug up and removed; (2) the existing base would be re-graded and compacted; (3) a stone base would be installed; (4) flexible edging would be installed; (5) one inch of concrete sand would be seeded over the stone base to provide a bed for the paver stones. Exhibit M-1.

Plaintiff responded with a letter dated April 21, 2004, stating that as Orman was the general contractor for the job, Plaintiff did not feel comfortable signing a contract with Debtor. Rather, he felt that Debtor's contract should be with Orman. Exhibit M-6. The letter also stated:

> Additionally, I wish to reiterate that my primary concern for performing this project is control of water flowing onto my property. Installation of the drain, contemporaneous with the pavers, is of paramount importance to me as I do not want there to be a situation when the pavers are installed and there is a delay with installation of the drain.

Exhibit M-6 at 1. The letter also expressed Plaintiff's desire for additional items, which he acknowledged might take an additional work order. These items included installation of a drain. Id. at 2.

Debtor agrees that there were drain problems with the existing driveway and testified that he pointed out some of them to Plaintiff. Tr. at 70-72. However, while contemporaneous installation of the drain appeared to be important to Plaintiff, it was not contemplated that Debtor would do this work. Debtor submitted an amended proposal dated

5

April 27 which identified Orman as the client and general contractor. Exhibit D-4.[2] This document expressly states that it "does not include . . . cost of and installation of the drain." Exhibit D-4. This is consistent with testimony that implies it was Orman who installed the drain. Tr. at 15 (Plaintiff's testimony that Orman was present for installation of the drain); Tr. at 18 (paid Orman for purchase of the drain); Tr. at 69 ("Frank was stuck on this drain at the top of the driveway").

Debtor completed the work under this contract in approximately two months. Tr. at 72. Plaintiff was sufficiently satisfied with Debtor's work that he sought a proposal from Debtor to work on a second area of the driveway, near the garage. Tr. at 68-69. This section had been previously set with paver stones by another contractor, but Plaintiff was having problems with puddling because the prior contractor had provided an insufficient pitch for runoff. Tr. at 18, 47, 73-75. Plaintiff initially obtained a quote from his existing landscaper, Mr. Stenger, but also sought a bid from Debtor. Tr. at 48-50, 73-75. Debtor's price was significantly lower than Stenger's proposal, and when Plaintiff asked why, Debtor explained that he was operating under the same assumption that, like the first contract, there would be no excavation of the base. It was at this point that he explained directly to Plaintiff (indirectly through Orman) that the first job was not warrantied because of Orman's unwillingness to consider the higher costs associated with excavation. Plaintiff responded

---

[2] Though it is unsigned, Plaintiff concedes that this is the contract that governed. Tr. at 41.

that he had not been aware of this and asked for a warranty as to the second job. Tr. at 73-74.

Debtor testified that he subsequently met with Plaintiff and Mr. Stenger to discuss the second job, that he expressed his concern at the amount of water that would be diverted by the slope, that he didn't believe the drains proposed by Stenger would be sufficient, and that Debtor did not want to be responsible for the drains or provide a warranty for them. Tr. at 75-76.[3] It was agreed that Stenger would handle the drains. Tr. at 50, 76.

Debtor and Plaintiff entered into a second contract dated August 30, 2004. Exhibit M-2.[4] The second contract does not include installation of drains. However, unlike the first contract, this contract specifies that the "[e]xisting base shall be excavated" rather than just "re-graded and compacted" as the first contract provided. Compare Exhibit M-2 and M-1. This second contract also provided that after removal of the base material, "soil (sub-base) shall be excavated to the proper depth to allow for a 8-10 inch stone base." Exhibit M-2.

Debtor subsequently provided a written, signed warranty to Plaintiff, dated September 10, 2004. Exhibit. M-3 (the "Warranty").[5] The Warranty is a form that contains no reference

---

[3] The parties were less than exact in their testimony, so the precise dates of these discussions are unclear. Presumably they occurred sometime in the summer of 2004 given that the second contract was dated August 30. See infra.

[4] This contract, like the first, is unsigned. However, it was admitted without objection, and Plaintiff concedes that it, along with D-4, govern the work performed by Debtor. Tr. at 14.

[5] An identical signed warranty was marked Exhibit D-5 and moved into evidence without objection. It differs only from M-3 in that it is dated August 31, 2004. No testimony was elicited as to this document and I cannot determine what, if any, independent significance it has from M-3.

to a particular job. It states, *inter alia*, that "Custom Patios shall repair damaged work, free of charge, that has been identified as a fault on our behalf." Id. The parties strongly dispute the scope of the Warranty. As stated above, Debtor's position is that he expressed his intent to warranty only the second job, which involved excavation of the base and underlying soil. Plaintiff asserts that Debtor agreed to a warranty both jobs prior to both contracts. Tr. at 18, 32.

During the work on the second contract, Debtor discovered that Stenger's employees had excavated some of the base material Debtor had laid down, which Debtor attributes to at least some of the subsequent problems with the driveway. Tr. at 77-78, 80-81. Debtor asserts that he raised his concerns over this undermining with Stenger's employee and was told it would be repaired and recompacted. Tr. at 77. It does not appear that Debtor expressed these concerns to Plaintiff.

In January or February of 2005, Plaintiff began noticing that paver stones in the driveway were beginning to migrate and turn black from water saturation. Tr. at 28. He contacted Debtor and they met on or about March 15. Tr. at 28-29, 79-80; Exhibit M-5. Debtor subsequently went back and performed some repairs, which were apparently unsatisfactory to Plaintiff. Tr. at 29, 31-32, 79. Debtor maintains that he is not at fault for the migration of the stones and that he has gone beyond his duty under the Warranty to satisfy Plaintiff. Suffice it to say, Plaintiff disagrees.

At trial, Plaintiff submitted an expert report that opines that Debtor improperly installed the driveway by failing to, *inter alia*, provide drains and/or underdrains and by

8

failing to place down a geo-textile separation fabric. M-4. As I noted at the trial, I do not find this report particularly relevant given that this case is not about Debtor's purported negligence, but rather as to whether he made certain misrepresentations so as to except Plaintiff's claim against him from discharge. However, it is consistent with both Plaintiff and Debtor's testimony that installation of drains was of importance for addressing water accumulation.

Having allowed the parties more than ample time to file proposed findings of fact and conclusions of law, this matter is ripe for adjudication.

**DISCUSSION**

Plaintiff seeks a determination that his claim against Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), which excepts from discharge any debt "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...." Id.

Given the "fresh start" policy embodied in the Bankruptcy Code, the provisions of § 523(a) are generally construed strictly against creditors and liberally against debtors. In re Cohn, 54 F.3d 1108, 1113 (3d Cir.1995). To successfully challenge dischargeability under section 523(a)(2)(A), a plaintiff must establish by a preponderance of the evidence that: (1) the debtor made a material representation knowing it was false; (2) the debtor made the representation with the intent and purpose of deceiving the plaintiff; (3) the creditor

9

justifiably relied on the debtor's false representation; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made. E.g., Strominger v. Giquinto (In re Giquinto), 388 B.R. 152, 165 (Bankr. E.D. Pa. 2008).

As noted above, Debtor's subjective intent is an essential element of a cause of action under §523(a)(2)(A). Id.(*citing* In re Ojeda, 2008 WL 1883221, at *11 (Bankr.N.D.Ill. Apr. 22, 2008) ("[a]ny cause of action under § 523(a)(2)(A)-false pretenses, false representation, or actual fraud-requires proof that the debtor acted with intent to deceive")). Moreover, "[t]o be actionable, the debtor's conduct must involve moral turpitude or intentional wrong: mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." In re Schwartz & Meyers, 130 B.R. 416, 422 (Bankr.S.D.N.Y.1991). Intent and knowledge may be inferred based on the "totality of the circumstances." Cohn, 54 F.3d at 1118-19.

In cases involving construction contracts, a claim for nondischargeability has been proven where the debtor/contractor intentionally misrepresents his qualifications. See, e.g., In re Clark, 330 B.R. 702, 707 (Bankr.C.D.Ill.2005) (finding that the debtor's false representation that he was a licensed and insured contractor was sufficient to bring debt under the scope of section 523(a)(2)(A)); In re Bozzano, 173 B.R. 990, 994 (Bankr.M.D.N.C.1994), *abrogated on other grounds* by Cohen v. De la Cruz, 523 U.S. 213, 118 S.Ct. 1212 (1998)(finding the debt nondischargeable under section 523(a)(2)(A) because the debtor falsely represented to the creditors that he was a licensed contractor and did so with the intent to deceive them into purchasing a home). See also In re Fuselier, 211 B.R.

10

540, 545 (Bankr.W.D.La.1997) (debtor falsely represented to the creditors that he had a contractor's license and did so with the intent to deceive them); In re McDaniel, 181 B.R. 883, 887 (Bankr.S.D.Tx.1994) (holding the debt not discharged because the debtor falsely represented that he was an architect). It may also be proven where the debtor enters a contract with the intent not to comply with its terms. Giquinto, 388 B.R. at 166.

With these standards in mind, I turn to the record before me. Absent a post-trial memorandum from Plaintiff, I have gone through the allegations in the Complaint[6] as well as Plaintiff's testimony to determine what misrepresentations or fraud he is alleging.

<u>The Nature and Extent of Debtor's Experience and Skills</u>

Plaintiff asserts that Debtor "held himself out and represented himself to be a contractor whose specialty and skill was in the installation of paver driveways." Compl. ¶ 6. I do not find that Debtor made such a representation. While Debtor indicated that he had installed a paver driveway before,[7] that representation did not amount to a claim of expertise

---

[6] The Complaint also alleges that Plaintiff was concerned about whether pavers were an appropriate material for a driveway and that Debtor reassured him that they were. Compl. ¶ 9. However, at trial it did not appear as if this was at issue. It only came up in the context of their subsequent disagreement in March of 2005, when Plaintiff asserts that Debtor raised the inadequacy of the stones as an excuse. Exhibit M-5. However, that is not relevant to the issue before me, i.e whether misrepresentations made at the time of the contracts in 2004. Finally, Plaintiff's own expert report does not indicate that the stones are inappropriate, so I do not view this as an issue.

[7] Any implication that can be drawn from Debtor's statement that he may have installed more than one paver driveway seems to be more in the nature of puffery rather that a misrepresentation of a material fact. See In re Copeland, 291 B.R. 740, (Bankr. E.D. Tenn. 2003) (Debtor's oral representation to creditor, made during sale of her cheesecake business, that the business was very profitable and that "[creditors] were very fortunate," was puffery and opinion, . . . did not constitute a statement going to "the essence" of the transaction as required for a material misrepresentation).

11

and specialization. Debtor's specialization was in other paver applications (i.e walkways and patios), consistent with the portfolio he gave Plaintiff to review. Indeed Plaintiff admits that there were no paver driveways in the exemplars he reviewed, a discovery that did not trouble Plaintiff when he examined the photographs of Debtor's prior work. The parties agree that Plaintiff had the opportunity to review significant samples of Debtor's work and was apparently satisfied with what he saw. If Plaintiff was relying on Debtor's representations regarding his past experience, he would have accepted the list of references that was offered to him and inquired of his experience and abilities. Instead he refused the offer. Finally, there was absolutely no evidence presented that there are special skills, licenses. or certifications particular to the installation of a paver driveways that would have been important to Plaintiff. Compare Clark, Bozzano, supra.

In short, I do not find that a specialization in the installation of paver driveways was a material fact of this transaction. "A material fact is one touching upon the essence of the transaction." Steiert v. Schroeder (In re Schroeder), 2006 WL 4452975 (Bankr. D. N.J. 2006)(citing 4 Collier on Bankruptcy ¶523.08[1][d] at 523-44.9 (15th ed. rev. 2005)). See also Matter of Van Horne 823 F.2d 1285, 1288 (8th Cir. 1987) ("While it is certainly not practicable to require the debtor to "bare his soul" before the creditor, the creditor has the right to know those facts touching upon the essence of the transaction").

To the extent that Plaintiff is arguing that Debtor misrepresented having the general skills necessary to install paver stones, I also disagree. I find that based on Debtor's sixteen years of work experience, the prior jobs that Plaintiff found impressive in Debtor's work

12

portfolio and his retention by Plaintiff to perform another and related job, Debtor did have the general skills required for the job.

In any event, to be fraudulent, the representation must not only be false but to have been relied upon. In re Giquinto, 388 B.R. at 165. The record indicates that Plaintiff relied primarily on Orman's recommendation in hiring Debtor. Tr. at 51-52.

Debtor's Representations as to Plaintiff's Water Problems

Plaintiff argued that Debtor misrepresented his ability to address the problems created by water runoff. Tr. at 10, 39, 47. The evidence simply does not support this allegation. Rather, the testimony of both Plaintiff and Debtor indicates that the only concrete representation Debtor made with respect addressing water issues was that he would ensure a proper pitch for water to flow downward. Tr. at 47, 75.[8]

Obviously pitch alone was not the cause of water accumulation. It is clear that the parties were in agreement that drains were necessary to address the problem. However, Debtor never represented that he would install the drains. To the contrary, the April 27 proposal accepted by Plaintiff for the first portion of the driveway expressly excluded "cost of and installation of the drain." Exhibit D-4. Indeed, it was Orman who handled installation of that drain. With respect to the second stage of the driveway, I found credible Debtor's testimony that he met with Plaintiff and Stenger and denied any responsibility for the drains.

---

[8] There is nothing in Plaintiff's expert report to indicate that the pitch of the driveway was faulty. Exhibit M-5. Moreover, even if that were the case, again, this is not a negligence suit. The only relevant issue would be whether Debtor intentionally misrepresented that he would pitch the driveway properly, knowing that he would not or could not do so.

Plaintiff did not rebut this testimony, but rather acknowledged that Stenger handled the drain installation. Tr. at 50. Plaintiff conveniently ignores the reality that Debtor was not working on the driveway alone, but was doing it in conjunction with Stenger and Orman. Indeed, given Plaintiff's own expert's opinion, it is counterintuitive that Plaintiff holds Debtor solely responsible for the persistent water problem rather than the individuals who performed work on the drains.

<u>Warranty Representations</u>

Plaintiff asserts that Debtor represented that the Warranty, Exhibit M-3, covered both jobs performed. Compl. ¶ 11; Tr. at 18, 32. Admittedly Debtor's form-style Warranty can be interpreted to cover all of the work of Custom Patios with no limitation indicated as to a particular portion of the driveway. Exhibit M-3. However, I do not find that Plaintiff has met his burden of proof that Debtor ever represented that the first job was warranted. On the contrary, Debtor testified specifically and credibly that he told Orman that he could not warranty the first job without excavating the base and underlying soil. Plaintiff made it clear to Debtor that he looked to Orman as the general contractor on the job, even to the extent of not wanting to contract directly with Debtor. Exhibit M-6. Following the parameters that were established by Plaintiff, Debtor was under no duty to advise Plaintiff of the lack of Warranty and properly assumed that Orman had conveyed the substance of their earlier conversation to Plaintiff. Moreover, when Debtor subsequently informed Plaintiff that the first job was not warrantied and why, Plaintiff did not challenge the advice. Tr. at 74. If Debtor had represented that he would warrant the first job, it seems more likely that he would

14

have provided and dated this form closer in time to the first job's completion in June, rather than contemporaneously with the second stage. Based on the foregoing, I find that no Warranty was provided for the first job and that only when the dispute between them arose after the warranty was provided with respect to the second job, did Plaintiff contend that he had a broad warranty for all work.

To the extent that Plaintiff feels Debtor has not complied with the Warranty even as to the second portion of the driveway, it was his burden to show for § 523(a)(2)(A) purposes that Debtor subjectively intended never to comply when he gave the warranty. See Giquinto, 388 B.R. at 165. There is nothing in this record to indicate Debtor had such an intent. I found credible Debtor's belief, even if incorrect, that Stenger's employees undermined the base material and voided Debtor's warranty obligations. This appears to be an honest dispute after the fact rather than an intentional deception on Debtor's part designed to induce Plaintiff into awarding him the second portion of the driveway job.

## CONCLUSION

While Plaintiff is understandably frustrated at the problems with his driveway, there is no evidence that Debtor made any material representations of fact to induce Plaintiff to hire him. Even assuming Debtor was negligent in his installation and that his performance may have contributed to the continuing water problems, mere negligence is not a basis to find Plaintiff's claim nondischargeable. Indeed, that is contrary to the "fresh start" policy behind

15

bankruptcy relief. For the reasons stated above, judgment is entered in favor of Debtor and against Plaintiff.

An Order consistent with the foregoing Memorandum Opinion shall issue.

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: February 24, 2009